**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LISA RAATZ, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> IDERA PHARMACEUTICALS, INC., JAMES GERAGHTY, VINCENT MILANO, JULIAN C. BAKER, MARK GOLDBERG, MAXINE GOWEN, KELVIN M. NEU, WILLIAM S. REARDON, BIOCRYST PHARMACEUTICALS, INC., NAUTILUS HOLDCO, INC., ISLAND MERGER SUB, INC., and BOAT MERGER SUB, INC., <br><br> Defendants. | Case No.  1:18-cv-10485 <br><br> CLASS ACTION <br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on January 22, 2018 (the "Proposed Transaction"), pursuant to which Idera Pharmaceuticals, Inc. ("Idera" or the "Company") will merge with BioCryst Pharmaceuticals, Inc. ("Parent") and its affiliates.

2. On January 21, 2018, Idera's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Parent, Nautilus Holdco, Inc. ("Holdco"), Island Merger Sub, Inc. ("Merger Sub A"), and Boat Merger Sub, Inc. ("Merger Sub B," and collectively with Parent, Holdco, and Merger Sub A, "BioCryst").  Pursuant to the terms of the Merger Agreement, shareholders of Idera

will receive 0.20 of a newly issued share of common stock of Holdco for each share of Idera common stock that they own.

3. On February 27, 2018, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Idera common stock.

9. Defendant Idera is a Delaware corporation and maintains its principal executive

offices at 167 Sidney Street, Cambridge, Massachusetts 02139. Idera's common stock is traded on the NasdaqCM under the ticker symbol "IDRA."

10. Defendant James Geraghty ("Geraghty") has served as Chairman of the Board of Idera since July 2013.

11. Defendant Vincent Milano ("Milano") has served as a director and Chief Executive Officer ("CEO") of Idera since December 2014.

12. Defendant Julian C. Baker ("Baker") has served as a director Idera since March 2014.

13. Defendant Mark Goldberg ("Goldberg") has served as a director of Idera since January 2014.

14. Defendant Maxine Gowen ("Gowen") has served as a director of Idera since January 2016.

15. Defendant Kelvin M. Neu ("Neu") has served as a director of Idera since March 2014.

16. Defendant William S. Reardon ("Reardon") has served as a director of Idera since 2002.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant Parent is a Delaware limited liability company and a party to the Merger Agreement.

19. Defendant Holdco is a Delaware corporation, a wholly-owned subsidiary of the Parent, and a party to the Merger Agreement.

20. Defendant Merger Sub A is a Delaware corporation, a wholly-owned subsidiary of

the Parent, and a party to the Merger Agreement.

21. Defendant Merger Sub B is a Delaware corporation, a wholly-owned subsidiary of the Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of Idera (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23. This action is properly maintainable as a class action.

24. The Class is so numerous that joinder of all members is impracticable. As of January 3, 2018, there were approximately 195,635,196 shares of Idera common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would

substantially impair or impede those non-party Class members' ability to protect their interests.

28. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

29. Idera is a clinical-stage patient-focused biopharmaceutical company developing novel nucleic acid therapeutic approaches for the treatment of certain cancers and rare diseases.

30. The Company's immunotherapy approach is based on the modulation of toll-like receptors ("TLRs") while its third-generation antisense technology is designed to inhibit the production of disease-associated proteins by targeting RNA.

31. On January 21, 2018, the Board caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired by BioCryst.

32. Pursuant to the terms of the Merger Agreement, shareholders of Idera will receive 0.20 of a newly issued share of common stock of Holdco for each share of Idera common stock that they own.

33. The press release announcing the Proposed Transaction stated, in relevant part:

BioCryst Pharmaceuticals, Inc. (NASDAQ:BCRX), and Idera Pharmaceuticals, Inc. (NASDAQ:IDRA), today announced that they have signed a definitive merger agreement to form a new enterprise focused on the development and commercialization of medicines to serve more patients suffering from rare diseases. The combined company will be renamed upon closing and will be led by Vincent Milano, CEO of Idera, who will also serve as a member of the Board. BioCryst Chairman, Robert Ingram, will be Chairman of the Board of the combined company and BioCryst CEO Jon P. Stonehouse will serve as a member of the Board of Directors. . . .

Under the terms of the merger agreement, each share of BioCryst common stock will be exchanged for 0.50 shares of the new company stock and each share of Idera

common stock will be exchanged for 0.20 shares of the new company stock. The exchange ratio reflects an "at market" combination based upon the approximate 30-day average volume weighted trading prices for each company. On a proforma, fully diluted basis, giving effect to all dilutive stock options, units and warrants, BioCryst stockholders will own 51.6 percent of the stock of the combined company and Idera stockholders will own 48.4 percent. The stock issuance in the merger is expected to be tax-free to stockholders.

The merger agreement has been unanimously approved by the boards of directors of both companies. The transaction is subject to approval by the stockholders of both companies, as well as regulatory approvals and satisfaction of other customary closing conditions. A significant stockholder of each company has agreed to enter into a voting and support agreement and has agreed to vote in favor of the transaction. This stockholder owns approximately 9% of Idera shares outstanding and approximately 14% of BioCryst shares outstanding. The transaction is expected to be completed by the end of the second quarter of 2018.

The combined company, which will be renamed post-closing, will be headquartered in Exton, PA, at the current Idera headquarters, with a consolidated research center in Birmingham, AL. In addition to Mr. Milano's role as CEO of the combined company, Dan Soland will join the combined company and will serve in the role of Chief Operating Officer.

34. The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Section 5.4(a) of the Merger Agreement provides:

> Each of Island and Boat shall immediately cease, and shall cause its respective Subsidiaries and Representatives to immediately cease, any discussions or negotiations with any Person that may be ongoing with respect to a Competing Proposal, or any proposal that would reasonably be expected to lead to a Competing Proposal, and shall request to have returned promptly to Island or Boat, as applicable, any confidential information that has been provided in any such discussions or negotiations. From the date hereof until the earlier of the Effective Time or the date of termination of this Agreement in accordance with Article 7, each of Island and Boat shall not, and shall cause its respective Subsidiaries and Representatives not to, directly or indirectly, (i) solicit, initiate or knowingly encourage or induce (including by way of furnishing information), or take any other action designed to facilitate, any inquiries or the making of any proposal which constitutes, or would reasonably be expected to lead to, any Competing Proposal, or (ii) engage in any discussions or negotiations regarding any Competing Proposal[.]

35. Additionally, the Company must promptly advise BioCryst of any proposals or inquiries received from other parties. Section 5.4(c) of the Merger Agreement states:

> In addition to the obligations of Boat and Island set forth in Section 5.4(a) and Section 5.4(b), Boat or Island shall promptly, and in any event no later than 24 hours, after it receives (i) any Competing Proposal or indication by any Person that is considering making a Competing Proposal, (ii) any request for non-public information relating to Boat or Island or their respective Subsidiaries, other than requests for information that would not reasonably be expected to result in a Competing Proposal, or (iii) any inquiry or request for discussions or negotiations regarding any Competing Proposal, notify the other party orally and in writing of any of the foregoing occurrences, the identity of the person making such request, inquiry or Competing Proposal and a copy of such request, inquiry or Competing Proposal (or where no such copy is available, a reasonably detailed description of such request, inquiry or Competing Proposal). Each party shall keep the other party reasonably informed (orally and in writing) on a current basis (and in any event at the other party's request and otherwise no later than 24 hours after the occurrence of any material changes, developments, discussions or negotiations) of the status of any request, inquiry or Competing Proposal (including the terms and conditions thereof and of any modification thereto), and any material developments, discussions and negotiations, including furnishing copies of any written inquiries, material correspondence and draft documentation, and written summaries of any material oral inquiries or discussions. Without limiting the foregoing, each party shall promptly (and in any event within 24 hours) notify the other party orally and in writing if it determines to begin providing information or to engage in discussions or negotiations concerning a Competing Proposal pursuant to this Section 5.4. Each of Boat and Island agrees that, subject to applicable restrictions under applicable Law, it shall, prior to or concurrent with the time it is provided to any third parties, provide to the other party any non-public information concerning Boat or Island and their respective Subsidiaries that Boat or Island provided to any third party in connection with any Competing Proposal which was not previously provided to the other party.

36. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants BioCryst a "matching right" with respect to any "Superior Proposal" made to the Company. Section 5.4(d) of the Merger Agreement states:

> Notwithstanding anything in this Section 5.4 to the contrary, at any time prior to obtaining the Boat Stockholder Approval or the Island Stockholder Approval, the Boat Board or the Island Board, as applicable, may make a Boat Adverse

7

Recommendation Change or an Island Adverse Recommendation Change, as applicable, if (i) such board determines that an Intervening Event has occurred and is continuing and (ii) such board determines in good faith (after consultation with outside counsel) that the failure to make a Boat Adverse Recommendation Change or an Island Adverse Recommendation Change, as applicable, in response to such Intervening Event would constitute a breach of its fiduciary duties under applicable Law; provided that (x) the Boat Board or the Island Board has given the other party at least four (4) Business Days prior written notice of its intention to take such action and specifying in reasonable detail the circumstances related to such determination and (y) prior to effecting a Boat Adverse Recommendation Change or an Island Adverse Recommendation Change, the applicable party has negotiated, and has caused its Representatives to negotiate, in good faith with the other party during such notice period to the extent such other party wishes to negotiate, to enable such party to revise the terms of this Agreement, such that the failure to make a Boat Adverse Recommendation Change or an Island Adverse Recommendation Change, as applicable, would not constitute a breach of its fiduciary duties under applicable Law.

37. The Merger Agreement also provides for a "termination fee" of $25 million payable by the Company to BioCryst if the Individual Defendants cause the Company to terminate the Merger Agreement.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

38. On February 27, 2018, defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

39. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

40. The Registration Statement omits material information regarding the Company's and BioCryst's financial projections and the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman").

41. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial

advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

42. With respect to the Company's financial projections, the Registration Statement fails to disclose: (i) the line items used to calculate unlevered free cash flows (operating activities and capital expenditures); and (ii) a reconciliation of unlevered free cash flow to the most directly comparable GAAP measure.

43. With respect to BioCryst's financial projections, the Registration Statement fails to disclose: (i) the line items used to calculate unlevered free cash flows (operating activities and capital expenditures); and (ii) a reconciliation of unlevered free cash flow to the most directly comparable GAAP measure.

44. With respect to the combined company's financial projections, the Registration Statement fails to disclose: (i) the line items used to calculate unlevered free cash flows (operating activities and capital expenditures); and (ii) a reconciliation of unlevered free cash flow to the most directly comparable GAAP measure.

45. With respect to Goldman's Illustrative Sum-of-the-Parts Discounted Cash Flow Analysis for Idera, the Registration Statement fails to disclose: (i) the specific inputs and assumptions underlying the discount rates; (ii) the estimates of corporate costs that were not allocated to specific products; (iii) Idera's cash as of December 31, 2017 as provided by Idera management; (iv) the probability of success ("POS") adjusted estimates of the free cash flows to be generated from each indication for IMO-2125, IMO-8400, and the nucleic acid chemistry compound; (v) the total number of fully diluted shares of Idera common stock; and (vi) the

additional shares illustratively assumed to be issued in the anticipated future financings at the different illustrative equity values for Idera.

46. With respect to Goldman's Illustrative Sum-of-the-Parts Discounted Cash Flow Analysis for BioCryst, the Registration Statement fails to disclose: (i) the specific inputs and assumptions underlying the discount rates; (ii) the estimates of corporate costs of BioCryst that were not allocated to specific products; (iii) BioCryst's net cash as of December 31, 2017 as provided by BioCryst management; (iv) the POS-adjusted estimates of the free cash flows to be generated from each HAE product candidate, Galidesivir, RAPIVAB®, FOP, and other development candidate; (v) the total number of fully diluted shares of BioCryst common stock; and (vi) the additional shares illustratively assumed to be issued in the anticipated future financings at the different illustrative equity values for BioCryst.

47. With respect to Goldman's Illustrative Sum-of-the-Parts Discounted Cash Flow Analysis for Holdco, the Registration Statement fails to disclose: (i) the specific inputs and assumptions underlying the discount rates; (ii) the estimates of corporate costs of Holdco that were not allocated to specific products; (iii) Holdco's pro forma net cash as of December 31, 2017 as provided by Idera and BioCryst managements; (iv) the POS-adjusted estimates of the free cash flows to be generated from each indication for IMO-2125, IMO-8400, and the nucleic acid chemistry compound; (v) the total number of fully diluted shares of Holdco common stock expected to be issued and outstanding after the Proposed Transaction; and (vi) the additional shares illustratively assumed to be issued in the anticipated future financings at the different illustrative equity values for Holdco.

48. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement:  (i)

Background of the Mergers; (ii) Idera's Reasons for the Mergers; Recommendation of the Idera Board; (iii) Certain Financial Forecasts Utilized by the Idera Board and Idera's Financial Advisor in Connection with the Mergers; (iv) Certain Financial Forecasts Utilized by the BioCryst Board and BioCryst's Financial Advisor in Connection with the Mergers; and (v) Opinion of Idera's Financial Advisor – Goldman Sachs.

49.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Idera's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Idera

50.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Idera is liable as the issuer of these statements.

52.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

53.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

54.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote

on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

55. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

56. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

57. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and BioCryst

58. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59. The Individual Defendants and BioCryst acted as controlling persons of Idera within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Idera and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

60. Each of the Individual Defendants and BioCryst was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Registration Statement.

62.     BioCryst also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

63.     By virtue of the foregoing, the Individual Defendants and BioCryst violated Section 20(a) of the 1934 Act.

64.     As set forth above, the Individual Defendants and BioCryst had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: March 14, 2018                **MATORIN LAW OFFICE, LLC**

By: */s/ Mitchell J. Matorin*
Mitchell J. Matorin (BBO# 649304)
18 Grove Street, Suite 5
Wellesley, MA 02482
(781) 453-0100

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800